# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4102

_____

Sandra Cox ,

              Appellant,

    v.

Jo Anne B. Barnhart, Commissioner,
Social Security Administration,

              Appellee.

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted:  September 12, 2003

Filed: October 8, 2003

_____

Before WOLLMAN, HEANEY, and RILEY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Sandra Cox filed for disability benefits and Supplemental Security Income (SSI) on March 10, 1999, alleging an inability to work since February 5, 1998. The Commissioner denied both her initial request for benefits and her subsequent request for reconsideration. She appealed, and an administrative law judge (ALJ) heard her case on April 20, 2000. The ALJ found that Cox was not entitled to disability benefits or SSI. The Appeals Counsel sustained that finding and dismissed her claim;

the district court affirmed the ALJ's decision; and Cox now appeals to us. We remand for a further taking of evidence.

## I. BACKGROUND

Cox was born on November 7, 1961, and has a tenth grade education. In the past, she has worked as a cake decorator, cashier, sewer, and a shoe splitter. Cox suffers from fibromyalgia and costochondritis. In addition to other symptoms, both diseases cause chronic muscle pain at various trigger points on her body. To ease Cox's extreme discomfort, her treating physicians have prescribed her various combinations of medications including: Vicodin, Remeron, costosternal injections, Voltaren, and MS-Contin (morphine). Cox's pain has persisted, however, and she has not maintained employment.

The ALJ found, despite her diagnosis of fibromyalgia and costochondritis, Cox was not disabled. He concluded that Cox could perform medium work, and was therefore capable of returning to her prior job as a shoe splitter. In reaching this decision, the ALJ discounted the opinion of Cox's treating physician, Dr. Van Alstine, opining that the doctor was inconsistent and conclusive in his reports. Further, the ALJ did not believe Cox, or her husband and neighbor, who both testified at Cox's hearing on her behalf.

## II. DISCUSSION

When the Commissioner finds a claimant is not disabled, thereby making her ineligible for disability benefits, we review the entire record to determine whether there is substantial evidence to support the finding. Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000). Substantial evidence is evidence that a reasonable person might accept "as adequate to support a decision." Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998). In our review of the record, we are to examine not only the evidence

that supports the Commissioner's conclusion, but also evidence that may detract from it. Tang v. Apfel, 205 F.3d 1084, 1086 (8th Cir. 2000) (citing Cox, 160 F.3d at 1207).

The ALJ is required to undertake a familiar five-part test in determining whether an adult is disabled. 20 C.F.R. § 416.920 (2003).[1] The first three steps are not at issue here: Cox is not gainfully employed; she does have significant impairments as a result of her fibromyalgia and costochondritis; and her impairments are not listed in the Social Security regulations. It is the fourth step in this analysis, whether Cox can perform her past relevant work, that Cox maintains the ALJ incorrectly assessed. We agree with Cox.

A. The Treating Physician's Opinion

In finding that Cox could return to her past relevant work as a shoe splitter, the ALJ improperly discounted the opinion of Dr. Van Alstine, Cox's treating physician. The ALJ maintained that Dr. Van Alstine's opinion was conclusory, "invade[d] the province of the final decision maker, the Commissioner," and was inconsistent. (R. at 18.) None of the reasons put forth by the ALJ, however, are valid justifications for stripping Dr. Van Alstine's opinion of all its weight.

The ALJ is correct in stating that conclusory statements by a doctor, if unsupported by the medical record, do not bind the ALJ in his disability determination. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of

_____

[1]The five part test is as follows: 1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five step analysis).

a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). It is the ALJ's job to reach a decision as to the claimant's legal disability by evaluating the objective medical evidence before him. Here, the ALJ found Dr. Van Alstine's June 21, 1999, letter to be conclusory, and an encroachment on his role as the adjudicator. In the letter, Dr. Van Alstine states:

> Ms. Cox is a patient of mine who has significant problems with arthritis, especially in the costo-sternal area as well as having severe fibromyalgia. She is significantly dysfunction [sic] in terms of level of activity. Because of this, she is currently unable to work. I am in the process of adjusting medications in order to maximize her level of function and attempt to get her to a point where she may be able to work. At this time, she is not able to be gainfully employed. Office notes are available to you for review.

(R. at 161.) If this letter were the only available record from Dr. Van Alstine, the ALJ would have been correct in giving it little weight due to its conclusory nature. This letter, however, is only one part of a larger medical record supplied by Dr. Van Alstine and Cox's other treating physicians.

Dr. Cole, who treated Cox for approximately one year, referred her to a "Pain Clinic expert," Dr. Van Alstine. (R. at 147.) By the time Dr. Van Alstine examined Cox, two doctors had already diagnosed her with fibromyalgia;[2] Dr. Van Alstine confirmed this diagnosis. Dr. Van Alstine continued to see Cox on a nearly monthly basis with Cox reporting "significantly worsening pain problems." (R. at 176.) Each visit, the doctor prescribed a different combination of medications in order to alleviate Cox's pain. In January of 2000, Dr. Van Alstine recommended Cox join a fibromyalgia clinic in order to aid her in coping with the disease.

---

[2]The first diagnosis was on October 15, 1998, at Park Medical Clinic. The second was on November 13, 1998 by Dr. Holt.

Viewed in context of her medical record, Dr. Van Alstine's letter is a culmination of the numerous visits Cox had with her past doctors, and his experience with treating her chronic pain.[3] See Turpin v. Bowen, 813 F.2d 165, 171 (8th Cir. 1987) (refusing to characterize the treating physician's observations as conclusory since the doctor had "numerous examinations and hospital visits" with the claimant).

The ALJ further opined that Dr. Van Alstine's June 21, 1999, letter is inconsistent with an earlier observation the doctor made on May 3, 1999. In reference to his May 3, 1999, visit with Cox,[4] Dr. Van Alstine noted, "[Cox] is an alert, oriented, white female who is neurologically unchanged. Overall, she is moving somewhat better." (R. at 151.) The June 21st letter, discussed above, states that Cox is not well enough to hold down a job. The ALJ found Dr. Van Alstine's earlier observation that "she is moving somewhat better" to be inconsistent with his ultimate opinion that Cox cannot be gainfully employed. We fail to see the inconsistency in these two statements. It is possible for a person's health to improve, and for the person to remain too disabled to work.

Having completely disregarded Dr. Van Alstine's medical opinion, the ALJ relied instead on the opinion of Dr. Leonard, a one-time consultative physician, and Disability Determination Service physicians who never examined Cox. We have

---

[3]We take notice of the fact that Dr. Van Alstine wrote the June letter after one examination of Cox. This should not render irrelevant the entirety of his experience in treating Cox. Dr. Van Alstine had other medical records on which to base his opinion, and continued to treat Cox after he wrote the letter in June. His subsequent observations and course of treatment of Cox remain consistent with his conclusion in June. Furthermore, if the ALJ was concerned about the timing of the letter, he should have ascertained whether Dr. Van Alstine, after treating Cox more extensively, still held the same views he expressed in the June letter.

[4]According to the record, May 3, 1999, was the first time Dr. Van Alstine examined Cox.

stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., Jenkins v. Apfel, 196 F. 3d 922, 925 (8th Cir. 1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id.

Dr. Leonard examined Cox on March 15, 2000. He completed a form entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," and indicated in items 1-4 the following: Cox could lift fifty pounds both occasionally and frequently, and had no limitations on standing, walking, sitting, pulling, or pushing. (R. at 168-69.) On this form, Dr. Leonard was explicitly asked, "What medical/clinical finding(s) support your conclusions in items 1-4 above?" (R. at 169.) He did not answer this question, making it difficult to discern the basis for Dr. Leonard's medical opinion from the face of the form. We have no way of telling if Dr. Leonard accessed Cox's past medical records;[5] what tasks Cox performed during the examination; the length of Dr. Leonard's examination; or if Dr. Leonard is aware that the test for Cox's employability is whether she can work in a competitive national economy. See McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (stating that the residual functional capacity of a claimant "is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world"). These are all questions the ALJ should have asked in light of the ALJ's duty to develop the record. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002) ("[T]he ALJ, on behalf of the Commissioner, is charged with the duty of fully and fairly developing the facts

---

[5]In his exam notes, Dr. Leonard states, "[t]he lady apparently has been diagnosed as having fibromyalgia by numerous physicians but never saw a rheumatologist." (R. at 163.) Cox had in fact previously been evaluated by a rheumatologist, Dr. Holt, suggesting that Dr. Leonard did not review her medical records prior to his examination of Cox.

of the case." (citing Cox 160 F.3d at 1209)). Even though the doctor provided no explanation for his conclusions as to Cox's abilities, the ALJ readily accepted Dr. Leonard's opinion. Instead, the ALJ should have obtained more information about the nature of Dr. Leonard's examination. This duty to uncover more facts is heightened because Dr. Leonard's evaluation directly contradicts Dr. Van Alstine's June letter, and the medical observations of several doctors leading up to the June letter.

B. Testimonial Evidence

The ALJ also improperly discredited Cox's testimony, her husband's testimony, and her neighbor's testimony about Cox's abilities. In response to the ALJ's inquiry as to why she cannot work, Cox said,

> Because the pain that deal [sic] with every day. The, the muscle spasms, the cramps. I can't sit still long. I can't stand long without hurting. I'm constantly with my heating pad. I have swelling of my ankles and my face and my hands. And it's – my joints will just go into spasms and they just hurt.

(R. at 44-45.) Her husband, Ricky Lane Cox, testified that Cox is in pain a good deal of the time, and he frequently has to help out with the housework. Cox's neighbor, Gale Grant, stated that when she visits Cox she sometimes can't stay long "because [Cox] can't handle it." (R. at 62.)

All of these observations are consistent with Cox's medical record, yet the ALJ found Cox only "fairly credible," and the witnesses to be biased and patronizing. (R. at 19.) The ALJ cites to Cox's work history as the basis for his credibility determination. We have reviewed the record, and calculate that Cox earned a total of $29,119.53 from 1992 to 1998. During this period she worked several jobs, the longest as a cashier at Wal-Mart. Cox quit her most recent job as a part-time cake

decorator after four months because she frequently missed work due to doctor visits (R. at 40-41.) The ALJ cites her low income jobs and unexplained employment gaps as the reasons for discrediting Cox. The ALJ, however, did not have enough information available to him to conclude that Cox was not motivated to work on these facts alone. The ALJ should further develop the record on this point.

III. CONCLUSION

The ALJ in this case failed to develop the record fairly and fully in assessing whether Cox will be able to find employment in a competitive national economy, in accordance with the <u>McCoy</u> standard. We reverse and remand the matter for proceedings consistent with this opinion.

_____