# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2887

_____

Eula Forehand,                                    *
                                                  *
                    Appellant,                     *
                                                  *    Appeal from the United States
        v.                                        *    District Court for the
                                                  *    Eastern District of Arkansas.
Jo Anne B. Barnhart, Commissioner,                 *
Social Security Administration,                    *
                                                  *
                    Appellee.                      *

_____

Submitted: January 16, 2004

Filed: April 26, 2004

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

HEANEY, Circuit Judge.

Eula Forehand appeals from a decision of the district court finding that there was substantial evidence in the record to support the decision of an administrative law judge (ALJ) that Forehand was not entitled to social security disability benefits. After a thorough review of the record, we reverse and remand to the district court with directions to remand to the ALJ for proceedings consistent with this opinion.

# BACKGROUND

Eula May Forehand was born on March 6, 1945, and has a high school education. She worked at DuPont Medical from 1976 to 1991 as a machine operator, earning honors for efficiency, and then worked as an assembler at Dana for a few months in 1992. Throughout the 1990s, she received medical treatment from a number of doctors for fibromyalgia, osteoarthritis in her hands, carpal tunnel syndrome, depression, and dysthymia. She has not engaged in substantial gainful employment since at least April 13, 1996.

In 1998, Forehand applied for social security disability benefits. Her claim was denied initially and on reconsideration. On March 16, 1999, a de novo hearing was held before an ALJ. The ALJ issued a decision on August 26, 1999, denying benefits. The ALJ found that despite Forehand's claims of disability and supporting evidence, she did not suffer any severe mental impairments and did not have an impairment that equaled a presumptively disabling impairment listed in the relevant regulations. The ALJ listed a number of what it considered "clear and convincing reasons for rejecting [Forehand's] allegations of her limitations": 1) no objective evidence supported Forehand's allegations of limitations; 2) she did not need assistive devices to walk; 3) she did not demonstrate any memory or concentration problems; 4) she did not exhibit any atrophy, significant weight changes, or difficulty moving; 5) each one of her medical examiners found her to be in no apparent distress and fully oriented; 6) she chose a conservative course of treatment; 7) she was never treated by a psychiatrist or psychologist; 8) she did not suffer debilitating side effects from her medication; 9) she told Dr. Richard Hester, a one-time consultative examiner, that she was doing "fairly well" with her treatment; and 10) her activities, such as caring for her personal needs and hygiene, doing laundry and other housework, and once moving furniture, contradicted her allegations of disabling limitations. (Tr. at 37-38.)

Forehand provided the ALJ with letters from witnesses supporting her claim of disability, medical records documenting her diagnoses and treatment history, and an opinion letter from Dr. Robert Quevillon, stating:

> I have attended the care of Eula Forehand since April 1996. During and before this time, she has been disabled by both chronic and severe fatigue and chronic pain. Fibromyalgia was diagnosed by another doctor in 1990. Because of these problems, she has had recurrent depression and dysthemia.
>
> Enclosed you will find her medical records. I do believe she is disabled.

(Id. at 181.)

The ALJ found Dr. Quevillon's opinion was entitled to minimal weight because he "did not include any objective findings to substantiate his opinion" and "substantial evidence contradicts this opinion." (Id. at 36). After hearing from a vocational expert who opined that Forehand could return to her past relevant manual labor work, the ALJ denied benefits. The district court affirmed, and this appeal followed.

## ANALYSIS

"We will affirm the ALJ's findings if they are supported by substantial evidence on the record as a whole." Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998). To assess the ALJ's decision, we consider the evidence that both supports and detracts from it. Cantrell v. Apfel, 231 F.3d 1104, 1106 (8th Cir. 2000). Our court "should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record." Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002) (quoting Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998)).

The issue before us is whether there is substantial evidence based on the whole record to support the ALJ's conclusion that Forehand can do her past relevant work. The answer to this question turns on whether: 1) the ALJ properly discounted the opinion of Forehand's treating physician, Dr. Quevillon; 2) the ALJ properly determined that Forehand does not suffer from significant mental impairments; and 3) Forehand's testimony about the severity of her pain and physical limitations was credible. These matters further require us to consider whether the ten "clear and convincing reasons" for rejecting Forehand's claimed limitations have support in the record.

In a letter attached to Forehand's medical records, Dr. Quevillon stated his belief that Forehand–his patient for the better part of three years–was disabled. The primary reason given by the ALJ for disregarding Dr. Quevillon's opinion was that Dr. Quevillon made a disability *conclusion*, "which is reserved to the Commissioner." (Tr. at 36.) The ALJ also found the letter to be inconsistent with the opinion of Dr. Hester, gleaned from his single examination, that Forehand was capable of work activities. Our review of the record leads us to conclude that the ALJ improperly discounted the opinion of Dr. Quevillon.

"A treating physician's opinion is generally entitled to substantial weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). In Cox v. Barnhart, 345 F.3d 606, 608 (8th Cir. 2003), the ALJ rejected an opinion letter from the claimant's treating physician, finding it conclusory and an invasion upon the province of the Commissioner's decision-making authority. We noted that if the letter "were the only available record from [the treating physician], the ALJ would have been correct in giving it little weight due to its conclusory nature." Id. at 609. As here, however, that was not the case: the letter was only part of a larger record that fully supported the opinion of the claimant's treating doctor. Id. Just as the claimant in Cox had established a history of treatment for fibromyalgia supported by

her medical record, so, too, has Forehand; beginning in the early 1990's, she saw a number of doctors complaining of symptoms consistent with her allegations of limitation.

In 1993, Dr. Jerry Nash treated Forehand for her complaints of pain and numbness. He suggested that she may be suffering from carpal tunnel syndrome, but was "concerned about other potential causes," including fibromyalgia. (Tr. at 158.) Dr. Randy D. Roberts of the Northeast Arkansas Internal Medicine Clinic treated Forehand from March 16, 1993 through April 15, 1996. He diagnosed her with fibromyalgia and sacralization of the lumbar spine. He repeated this diagnosis on April 23, 1993; May 21, 1993; June 18, 1993; October 8, 1993; March 28, 1994; October 19, 1994; February 28, 1995; June 7, 1995; August 15, 1995; and January 30, 1996.

Dr. Quevillon began treating Forehand in April of 1996. He treated her on at least twenty occasions from April 25, 1996 to April 28, 1998. His medical reports indicate that she suffered from chronic pain throughout her body, headaches, back problems, depression, withdrawal, and lack of concentration. He diagnosed her with fibromyalgia, depression, and dysthemia, and prescribed medication to alleviate her symptoms.[1] On some occasions, Forehand would feel better than others, but Dr. Quevillon's basic diagnosis remained the same throughout his treatment of her. Clearly, Dr. Quevillon's opinion letter was not only supported by his own medical observations, but was entirely consistent with the findings and diagnoses of Forehand's past treating physicians.

---

[1]As is so frequently the case, many medical reports, and particularly those of Dr. Quevillon, are very, very difficult to read. We reiterate that "the ALJ, on behalf of the Commissioner, is charged with the duty of fully and fairly developing the facts of the case." Hildebrand, 302 F.3d at 838. This responsibility includes, at the very least, ensuring that this court is provided with an appellate record that is readable by supplementing the record through additional testimony or exhibits where necessary.

Forehand long exhibited symptoms consistent with fibromyalgia, such as sleep deprivation, fatigue, and pain. See Kelley, 133 F.3d at 589 (noting fibromyalgia "often leads to a distinct sleep derangement which often contributes to a general cycle of daytime fatigue and pain"). The disease is chronic, and "[d]iagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests." Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003). In light of the medical reports and record in this case, it appears the ALJ gave little weight to the consistent diagnosis of fibromyalgia or its debilitating effect on Forehand. We have long recognized that fibromyalgia has the potential to be disabling, id. at 678, and find the ALJ erred by not crediting Dr. Quevillon's opinion letter to that effect. Moreover, to the extent that Dr. Hester's report was inconsistent with Forehand's historical diagnoses and treatment, the ALJ erred by giving greater weight to Dr. Hester's report. See Kelley, 133 F.3d at 589 ("The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.").

Forehand testified that she has difficulty sleeping at night; has a lot of headaches and pain in her shoulder, hand, and back; can walk only one-eighth of a mile before being forced to sit down and recover for thirty minutes; can stand for an hour and then must lay down to ease the pain; can sit for only thirty minutes without standing; and can lift only a broom, cup, or glass at home. She has difficulty bending, stooping, and squatting. She can dress herself, and does some housework. She drives seven miles to see her parents a few times a week. She has no hobbies, and attends no social activities. The ALJ rejected Forehand's testimony as not credible for the reasons stated earlier in this opinion. We disagree, and find the reasons listed by the ALJ are either unsupported by the record or unpersuasive on the issue of whether Forehand's allegations of limitation are true. The medical reports of many treating physicians amply support her allegations of pain and limitation. The fact that she does not use assistive devices to walk is simply no reason to reject her claims of pain, particularly in light of medical reports that support her complaints of trouble with

-6-

walking and standing. As to her mental state, tests administered by David C. Loe, Ph.D., a consultive psychologist, indicate that Forehand has significant memory and concentration difficulties, and suffers from depression. While Forehand may not have sought specific psychiatric treatment, she did consistently seek treatment from physicians for her mental health, as evidenced by Dr. Quevillon's notes and prescriptions. Moreover, even crediting the ALJ's determination that Forehand took a conservative approach to treating her ailments, we fail to see the significance of that fact, especially considering that Forehand must pay for each doctor visit in cash out of her own pocket.

The ALJ further found that Forehand's allegations of limitation were inconsistent with her daily activities. Forehand's ability to engage in some life activities, however, does not support a finding that she retains the ability to work. See Brosnahan, 336 F.3d at 677 ("[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity."). We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether she has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). This test is consistent with relevant regulations on the issue, see 20 C.F.R. § 404.1545, and we have reiterated it on a number of occasions, see, e.g., Cox, 345 F.3d at 610 (restating McCoy standard); Wilcutts, 143 F.3d at 1137 (noting the "most important issue" in a disability determination is whether the claimant has "the ability to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world"); Ingram v. Chater, 107 F.3d 598, 604 (8th Cir. 1997) (repeating McCoy test); Pope v. Bowen, 886 F.2d 1038, 1041 (8th Cir. 1989) (same); Martonik v. Heckler, 773 F.2d 236, 239-40 (8th Cir.

1985) (same).  Notwithstanding this well-settled case law, our mandate is frequently ignored, and appears to have been in this case.

## CONCLUSION

Forehand's allegations of limitation, evidenced by her subjective complaints of physical and mental distress, were consistent with the great majority of reports of her physicians and her examining psychologist.  The ALJ erred by disregarding her testimony and the opinion of her treating physician.  We reverse and remand to the district court with directions to remand to the ALJ for reconsideration consistent with this opinion.