# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2123

———————

Kathie Garza,     *
    *
        Appellant,     *
    *    Appeal from the United States
v.     *    District Court for the
    *    Southern District of Iowa.
Jo Anne B. Barnhart, Commissioner of    *
Social Security,     *     **PUBLISHED**
    *
        Appellee.     *

———————

Submitted: January 6, 2005
Filed: February 15, 2005

———————

Before RILEY, McMILLIAN, and GRUENDER, Circuit Judges.

———————

PER CURIAM.

Kathie Garza (Garza) appeals the district court's order affirming the denial of disability insurance benefits and supplemental security income benefits. In Garza's October 1999 applications and later documents, she alleged disability since February 1998 from rheumatoid arthritis and depression, and from memory, concentration, and stomach problems. In May 2000, while Garza's applications were pending, Dr. Theodore Rooney (Dr. Rooney), a rheumatologist, diagnosed Garza with fibromyalgia, opining it caused most of her symptoms as her rheumatoid arthritis was reasonably controlled. After a December 2002 hearing, during which a vocational

expert (VE) testified, an administrative law judge (ALJ) determined Garza had rheumatoid arthritis, major depression, and gastroesophageal reflux disease; Garza's allegations as to her limitations were not entirely credible; and, based on the VE's testimony in response to a hypothetical the ALJ posed, Garza could perform her past relevant work.

We reject Garza's challenge to the ALJ's credibility determination, because the determination was based on valid reasons. See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."). We also reject Garza's argument that the ALJ improperly disregarded the opinions of a treating social worker and a Social Security Administration reviewing psychologist concerning Garza's mental residual functional capacity (RFC). First, Garza failed to seek therapy after December 1998, and at the hearing, failed to link her limitations to depression. See Brosnahan v. Barnhart, 336 F.3d 671, 676 (8th Cir. 2003) (agreeing with ALJ's decision to discount psychologist's opinion, noting claimant quit counseling after four sessions, ignored recommendations for psychotherapy, and linked her activity limitations to physical problems). Second, the social worker's letter about Garza's mental RFC was written about a year after she last treated Garza–and then for only about five months– and she attached no treatment records supporting her RFC conclusions. Cf. Forehand v. Barnhart, 364 F.3d 984, 986 (8th Cir. 2004) ("A treating physician's opinion is generally entitled to substantial weight, . . .[but it] must be supported by medically acceptable clinical or diagnostic data."). Third, the social worker's and reviewing psychologist's RFC findings conflicted with those of a consulting psychologist, whose findings were based on testing. See Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (stating an ALJ must determine RFC based on all relevant evidence).

Garza asserts the ALJ erred by discounting the physical RFC findings of treating physician Martina Darulova (Dr. Darulova). We disagree. Dr. Darulova's opinion on the extent of Garza's physical limitations was inconsistent with her colleague's December 1999 assessment of Garza's disability status; with Dr. Rooney's May 2000 opinion as to Garza's inability to work for only twelve to eighteen weeks until he could get her pain under control; and with Dr. Darulova's own relatively mild examination findings. Cf. Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (noting an ALJ may discount treating physician's opinion if she has offered inconsistent opinions). Garza also complains the ALJ did not discuss Dr. Rooney's opinion as to Garza's RFC, but this is not a material omission because Dr. Rooney's opinion was based on his experience with fibromyalgia patients in general and did not focus on Garza.

Garza argues the ALJ erred by not listing fibromyalgia as a severe impairment. In summarizing the medical evidence, the ALJ mentioned Dr. Rooney's May 2000 fibromyalgia diagnosis, but the ALJ did not discuss specifically other physicians' subsequent references to fibromyalgia; and the ALJ specifically stated that Garza's symptoms of muscle aches and pains had not been substantiated by objective medical testing.[1] We thus agree with Garza that the record indicates the ALJ misunderstood fibromyalgia. See Forehand, 364 F.3d at 987 (noting (1) fibromyalgia is a chronic condition, usually diagnosed after eliminating other conditions; (2) no confirming diagnostic tests exist; and (3) our court has long recognized fibromyalgia might be disabling); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996) (finding of no severity is limited to medical impairment(s) that would have no more than minimal effect on claimant's ability to work).

---

[1]The ALJ also stated, despite multiple blood results indicative of rheumatoid arthritis, there was minimal objective evidence to support Garza's assertion that she had this condition.

It also appears the ALJ's misunderstanding of fibromyalgia affected the ALJ's RFC findings, and her related hypothetical to the VE. The ALJ formed her hypothetical by stating, if it were accepted that Garza had "some" fibromyalgia, such a condition would only limit her to lifting twenty pounds occasionally and ten pounds frequently, especially during flare-ups. While Dr. Rooney made no specific RFC findings as to Garza, he did opine as to the limitations normally found in fibromyalgia patients, for which he recommended sedentary work and other restrictions such as needing an opportunity to move around at least once or twice an hour, see 20 C.F.R. §§ 404.1567(a)-(b), 416.967(a)-(b) (sedentary work involves lifting no more than 10 pounds; light work involves lifting no more than 20 pounds, with frequent lifting or carrying of 10-pound objects), and such limitations differ markedly from the ALJ's assessment of fibromyalgia-related limitations. Further, while the ALJ's physical RFC findings are consistent with those of a Social Security Administration reviewing physician, the reviewing physician made his findings in January 2000, before Dr. Rooney diagnosed Garza with fibromyalgia in May 2000.

We conclude we must remand this case to the ALJ so she can reconsider whether Garza's fibromyalgia diagnosis on or after May 2000 constitutes a severe impairment, and, if so, whether it is disabling. We direct the ALJ to develop the record further by obtaining the medical records of rheumatologist Goel and the most recent medical records from Dr. Rooney. At that point, if it is still necessary, the ALJ may pose a revised hypothetical to a VE. See Forehand, 364 F.3d at 988 (noting in a fibromyalgia case that RFC determination requires consideration of whether claimant can perform requisite physical acts on daily basis in sometimes competitive and stressful conditions in the real world); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) (noting the ALJ must develop record fully and fairly even when claimant is represented by counsel); Hutton v. Apfel, 175 F.3d 651, 656 (8th Cir. 1999) ("Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence."); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (encouraging Commissioner to give greater weight to specialist's opinion).

We note, however, that the record does not support a finding of disability before March 1999, Garza's date last insured for purposes of disability insurance benefits: Dr. J.B. McConville, Garza's treating physician, opined in December 1999 that Garza's physical findings did not support disability, and fibromyalgia was not diagnosed until May 2000. Thus, only Garza's supplemental security income claim survives on remand.

Accordingly we affirm, in part, and reverse and remand, in part, for further proceedings consistent with this opinion.

_____