Justin P. WHITE, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 4:04–CV–90305.

United States District Court,
S.D. Iowa,
Central Division.

May 11, 2005.

Gregory W. Peterson, Elverson Vasey & Peterson, LLP, Des Moines, IA, for Justin P. White, Plaintiff.

Christopher D. Hagen, U.S. Attorney's Office, Des Moines, IA, for Commissioner of Social Security, Defendant.

## ORDER

PRATT, District Judge.

Plaintiff, Justin P. White, filed a Complaint in this Court on June 4, 2004, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

## BACKGROUND

Plaintiff filed an application for Social Security Disability Benefits on October 5, 2001, claiming to be disabled since September 5, 2001. Tr. at 49–51. Plaintiff, whose date of birth is April 15, 1975, was 26 years old at the time of his application. Tr. at 49. After the application was denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Thomas M. Donahue (ALJ) on October 23, 2003. Tr. at 205–19. The ALJ issued a Notice Of Decision—Unfavorable on December 22, 2005. Tr. at 11–21. After the decision was affirmed by the Appeals Council on April 23, 2004, (Tr. at 4–7), Plaintiff filed a Complaint in this Court on June 4, 2004.

Plaintiff in this case has been diagnosed with chronic hepatitis C, for which he underwent a course of treatment with pegylated interferon in combination with ribavirin. Medical records indicate that he tolerated the therapy fairly well although he experienced common side effects including fatigue, decreased appetite and flu-like symptoms. Tr. at 191. On April 15, 2002, Stephanie Schmidt, PA–C, a physician Assistant, in Liver Services at the University of Iowa Hospitals and Clinics, wrote that because Plaintiff had a good result with the interferon, and because a biopsy showed only mild fibrosis in his liver, that it was determined that 24 weeks of therapy would be sufficient, and the treatment was discontinued. Tr. at 192.

Even more serious, Plaintiff suffers from Hemophilia. Donald Macfarlane, M.D., Plaintiff's treating physician at the University of Iowa, wrote that this impairment causes pain and swelling due to hemophilia related bleeding episodes the majority of which are into Plaintiff's right knee. This condition is treated with injections of factor VII, rest, ice, application of compression and elevation of the knee. Dr. Macfarlane wrote that the orthopedic doctors had recommended arthroscopic synovectomy which, it was hoped would reduce the number of knee bleeds. Tr. at 193. The doctor wrote that Plaintiff is unable to walk more than 200 yards and

that he cannot bend, stand, or have constant weight or movement on his right knee. The doctor opined that in a work situation, Plaintiff would need the opportunity to take unscheduled breaks to relieve pain, and that he would probably miss three to five work days each month due to bleeding. Tr. at 194. On September 28, 2001, Dr. Macfarlane wrote that until about a year before, Plaintiff was only taking recombinant Factor VIII injections every one or two months, but that in the previous year the frequency of the injections had increased to two to three times a month due to pain and edema in the right knee. Tr. at 161.

At the hearing of October 23, 2003, Plaintiff testified that he attends college at Indian Hills Community College in Centerville, Iowa. Plaintiff said that he does poorly in class, receiving Ds, Cs, and incompletes due to his inability to attend class regularly. Tr. at 208 & 210–11. (See also Tr. at 130, which is a copy of a mid-term grade report from Indian Hills Community College showing a grade point average of 1.00). Plaintiff said that he did not do many chores around the house, that his wife did most of them. Tr. at 210. When asked to explain what happens during a bleeding episode, Plaintiff testified:

> ... A lot of times I won't even have to bump it. ... a lot of times it's either my left or right knee, sometimes my ankles, but I'll just wake up sometime,—some mornings and it'll be swelled and I'll have to take my recombinant, and keep my leg elevated up and ice packs on it. And if it's swelled a lot it'll take—it might take three, four days for it to go down. But if it's swelled just a little bit and I catch it in time, maybe a day or two.

Plaintiff said that the pain was "real bad burning pain." He said that when one or the other of his knees swell, he takes his medication, and keeps it elevated and puts ice packs on it. He said that it will take between a day or two and three or four days for the swelling to subside, depending on how much it has swollen when he first sees it. In addition to swelling, there is "real bad burning pain." He said that the knee will swell to one and a half times it's normal size. He said that he can not stand on the knee when it's swollen and can not wear his brace. Tr. at 212. Plaintiff said that the swelling happens three to six times per month. Tr. at 213.

After Plaintiff's testimony, the ALJ called Elizabeth Albrecht to testify as a vocational expert. Tr. at 215. The ALJ asked two hypothetical questions:

> First one, being age 28, male, 12th grade education, one year in college, past relevant work is set forth in Exhibit 17E (Tr. at 131), lifting up to 20 pounds occasionally, ten pounds frequently, sitting up to 30 minutes at a time for at least, two, of an eight hour day, walking up to two blocks at a time, only occasional climbing of ramps and stairs, only occasional balancing, stooping, kneeling, bending, and crouching, no crawling ... should avoid concentrated exposure to extreme heat, wetness, humidity, vibration, and no working at heights. Based on that hypothetical could the Claimant do any of his past relevant work?

The vocational expert testified that all of Plaintiff's past work would be precluded due to the limitations. Tr. at 216. The vocational expert testified that the hypothetical would allow for some unskilled sedentary jobs such as final assembler, order clerk, and call-out operator. In a second hypothetical, the vocational expert was asked to consider that due to chronic pain syndrome Plaintiff would miss three or more days of work per month. Tr. at 217. The vocational expert testified that such a limitation would preclude all competitive employment. Tr. at 218.

In his decision, the ALJ found that Plaintiff cannot do his past relevant work but has the residual functional capacity to perform the type of work identified by the vocational expert at the hearing. Tr. at 20. The ALJ found that Plaintiff's testimony was not credible and that Dr. McFarlane's opinion of Plaintiff's residual functional capacity was inconsistent with other evidence in the record. Tr. at 18.

## DISCUSSION

Our review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *Raney v. Barnhart,* 396 F.3d 1007, 1009 (8th Cir.2005). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000). In reviewing the Commissioner's decision, we do not substitute our own view of the evidence for that of the Commissioner. *Kelley v. Barnhart,* 372 F.3d 958, 960 (8th Cir.2004). Whether the record supports a contrary result or whether we might decide the facts differently is immaterial. We must affirm the Commissioner's decision if the findings are supported by substantial evidence. *Roberts v. Apfel,* 222 F.3d 466, 468 (8th Cir. 2000).

*Tellez v. Barnhart,* 403 F.3d 953, 956 (8th Cir.2005).

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975). *See also Patrick v. Barnhart,* 323 F.3d 592, 595 (8th Cir.2003).

■ It is well settled law in the Eighth Circuit that while credibility findings are, in the first instance, for the ALJ, a finding that the testimony of a claimant is not credible must be supported by good reasons. Here, Plaintiff testified that he can no longer engage in his past relevant work as a welder, a fact which the ALJ accepted. Plaintiff said that he is unable to function several days each month due to bleeding. When the bleeding occurs, he must elevate the affected joint, apply ice, take medication, and wait for the swelling to subside. The ALJ gave no persuasive reason to disbelieve this testimony. The ALJ pointed to Plaintiff's ability to attend his local community college. Plaintiff, however, provided evidence that he is barely able to maintain any grade point average at all. A 1.00 grade point average would indicate a lack of consistent class attendance and serious problems completing assigned work. The ALJ wrote that Plaintiff's daily activities of attending school and limited work around the house, "demonstrates a level of vigor and ability to concentrate and interact which is inconsistent with the claimant's claim that he is unable to perform any work activity due to disabling physical problems." Tr. at 18. This statement by the ALJ is not reflective of the record before him.

It is true that Plaintiff is not totally bed ridden. He does more than vegetate in a dark room. Neither are preconditions for disability benefits. When Plaintiff was asked about his ability to do chores, he responded: "Not too much. Usually my wife does most of it." He said that he may do dishes once in a while. Tr. at 210. *See also* questionnaires Plaintiff filled out in conjunction with his application in which he said that he can only occasionally do very limited house work such as washing dishes. Tr. at 90. Furthermore, the Court would note that until he was prevented from working by hemophilia, Plaintiff earned high wages as a welder. *See* Tr. at 65 which shows earnings of between $19,000 and 35,000 from 1995 through

2001, which is the onset of his disability. These earnings entitle Plaintiff to substantial credibility. *Nunn v. Heckler,* 732 F.2d 645, 648 (8th Cir.1984). The ALJ's credibility finding is simply not supported by the record as a whole.

■ Likewise, the ALJ's rejection of Dr. Macfarlane's opinion regarding Plaintiff's impairments and limitations is without support in the record. In *Forehand v. Barnhart,* 364 F.3d 984, 986 (8th Cir.2004), the Court restated long held Circuit law that a treating physician's opinion is generally entitled to substantial weight. As in *Forehand,* Dr. Macfarlane's letter stating that he expected Plaintiff would be unable to work several days each month, is part of a larger record that fully supports the doctor's opinion.

The Court has made an exhaustive search of this record for substantial evidence which will support the ALJ's decision. That evidence is not here. This is not a situation in which is possible to draw inconsistent conclusions from the evidence. Although Plaintiff may be able to function as the ALJ found occasionally, because of the effects of hemophilia he is not able to do it day in and day out in competitive and stressful conditions in which real people work in the real world. *See Forehand,* 364 F.3d at 988, citing, among other cases, *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982)(en banc).

■ The ALJ's decision is without support of substantial evidence in the record as a whole. When the vocational expert was asked the effect of Plaintiff's inability to work 3 or more days each month, it was her testimony that competitive work is not possible. A remand to take additional evidence, therefore, would only delay the benefits to which Plaintiff is entitled. In such circumstances, the Court may reverse and order an award of benefits. *Duncan v. Barnhart,* 368 F.3d 820, 824 (8th Cir.2004), citing *Gavin v. Heckler,* 811 F.2d 1195, (8th Cir.1987).

## CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D.Ark.1987). A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is entitled.

The final decision of the Commissioner is reversed and the Commissioner is ordered to award Plaintiff the benefits to which he is entitled.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b) [1].

IT IS SO ORDERED.

---

1. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."