**Jesse James WEBSTER, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. 3:08–cv–104 RWP–RAW.**

United States District Court, S.D. Iowa, Davenport Division.

June 5, 2009.

Christopher D. Hagen, U.S. Attorney's Office, Des Moines, IA, for Defendant.

Michael DePree, Bowman & Depree, Davenport, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Plaintiff, Jesse James Webster, filed a Complaint in this Court on August 12, 2008, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed applications for benefits on February 9, 2005. Plaintiff was 28 years old at the time of the hearing on October 29, 2007. Tr. at 655. After the applications were denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. The hearing was held before Administrative Law Judge Joseph W. Warzycki (ALJ). Tr. at 649–702. The ALJ issued a Notice Of Decision—Unfavorable on December 28, 2007. Tr. at 15–28. The Appeals Council declined to review the ALJ's deci-

sion on July 19, 2008. Tr. at 8–12. Thereafter, Plaintiff commenced this action.

The ALJ proceeded through the steps of the sequential evaluation, finding that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. He found that Plaintiff has severe impairments consisting of diabetes, obesity, coronary artery disease, learning disability, and attention deficit hyperactivity disorder. The ALJ found that none of these impairments, alone or in combination, meets or equals any found in the listing of impairments. The ALJ found that Plaintiff is unable to do any of his past relevant work, but that other work exists in significant numbers that he can perform. The ALJ held that Plaintiff is not disabled and not entitled to the benefits for which he applied.

## DISCUSSION

■ In conducting this review, we determine whether the ALJ's decision to deny benefits is based on legal error, and "whether the findings of fact are supported by substantial evidence in the record as a whole." *Lowe v. Apfel*, 226 F.3d 969 971 (8th Cir.2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).

*Brown v. Barnhart*, 390 F.3d 535, 538 (8th Cir.2004). In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir.1975).

In his brief, Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole. Plaintiff argues that the ALJ's finding of residual functional capacity is not supported by substantial evidence and that the ALJ improperly discredited Plaintiff's testimony; that the ALJ relied on the vocational expert's response to an improper hypothetical question which failed to adequately describe Plaintiff's physical and mental impairments; that the ALJ improperly rejected the opinion of a physician on the question of Plaintiff's ability to work; and that the ALJ's hypothetical was not the same as the finding of residual functional capacity found in the decision. The Commissioner takes issue with each of Plaintiff's appeal points and argues that the ALJ's decision is supported by substantial evidence on the record as a whole and should be affirmed.

■ However, before the Court examines the record to determine if the final decision of the Commissioner is supported by substantial evidence on the record as a whole, the Court must assure it self that the decision is free of other legal error. In *Haynes v. Heckler*, 716 F.2d 483 (8th Cir.1983), the ALJ had relied on the medical vocational guidelines to find the claimant not disabled in spite of the fact that the claimant suffered from nonexertional impairments. The Court, Judge Fagg, wrote: "Because the regulations pertaining to evaluation of nonexertional impairments were not followed in this case, we do not reach the issue of whether the decision of the Secretary was supported by substantial evidence."

■ In *Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir.1997), the Court wrote: "Once published, Social Security Rulings are 'binding on all components of the Social Security Administration.' 20 C.F.R. § 422.406(b)(1)(1996); see *Heckler v. Edwards*, 465 U.S. 870 n. 3, 104 S.Ct. 1532, 1534 n. 3, 79 L.Ed.2d 878 (1984)." In *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir.2003), the Court held that the

ALJ's failure to follow the procedures for the evaluation of alcoholism as set forth in the regulations, was legal error which required reversal and remand. In the case *sub judice,* the failure to follow the Commissioner's directives regarding the proper evaluation of obesity is also reversible error.

In the case at bar, all of Plaintiff's impairments and limitations stem from his morbid obesity. Plaintiff is 71 inches tall and weighs between 350 and 400 pounds—give or take. For example, on February 27, 2006, Mary Feria, M.D., wrote that Plaintiff's morbid obesity was associated with chronic low back pain, elevated liver enzymes, obstructive sleep apnea, and dyslipidemia. Dr. Feria also noted major depression and attention deficit disorder. Tr. at 452. Plaintiff's extreme obesity was also noted during the processing of his claim at Disability Determination Services. *See, e.g.* Tr. at 419.

Throughout the record, Plaintiff complains that he has been fired from numerous jobs for "being too slow." When he was seen by Steven Paul Singley, M.A., for a psychological evaluation, Plaintiff reported that he had been fired from over 300 jobs. Tr. at 397. While this is undoubtedly an exaggeration, most of the jobs he has obtained lasted only for a few days—sometimes only a few hours. Dr. Singley also pointed out that Plaintiff had made seven applications for disability benefits. Tr. at 397–400.

Social Security Ruling (SSR) 02–1p is a policy interpretation ruling entitled: Evaluation of Obesity. On remand, both the ALJ and counsel are directed to read this ruling carefully, and then apply it to the facts of Plaintiff's case. This SSR points out that obesity is a life long impairment, and that although the obesity listing was deleted, the impairment requires special consideration in the evaluation of a disability claim. Among other things, the ruling states:

> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea [as does Plaintiff]. This can lead to drowsiness [of which Plaintiff complains frequently] and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in *SSR 96–8p* ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule[1]. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

*Id,* at *6. In SSR 00–3p, another ruling on the question of obesity, The Commissioner explained that obesity can be severe enough that it equals the severity of a listed impairment. *Id.* at *4.

■ The ALJ was of the opinion that Plaintiff's daily activity, including doing house and yard work for his grandmother, discredited his claim of disability. The ability to do such activity, however, is not equivalent to doing substantial gainful ac-

---

**1.** *See also McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982)(en banc).

tivity as described above. In *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir.2004), the Court wrote:

> The ALJ further found that Forehand's allegations of limitation were inconsistent with her daily activities. Forehand's ability to engage in some life activities, however does not support a finding that she retains the ability to work. *See Brosnahan [v. Barnhart]*, 336 F.3d 671, 677 (8th Cir.2003) ("[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity.") We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether she has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982)(en banc).... Notwithstanding this well-settled case law, our mandate is frequently ignored, and appears to have been in this case.

Psychological problems are often associated with obesity. Plaintiff's IQ has been tested on a number of occasions. In spite of suggestions of personality problems, however, Plaintiff was not evaluated for any possible personality disorders. On remand, Plaintiff's counsel should arrange for psychological testing which includes the administration of the Minnesota Multiphasic Personality Inventory. In *Stone v. Harris*, 657 F.2d 210, 211 (8th Cir.1981), the Court noted that the ALJ had reached the decision on Stone's disability by virtually ignoring her psychological problems. The primary impairment in *Stone* was obesity. As though he were anticipating the above cited SSRs, Judge Peck, in *Stone*, wrote: "The notion that all fat people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte [2]."

In *Brueggemann v. Barnhart*, 348 F.3d at 695–96, the Court held that the ALJ's failure to follow the proper procedures deprived the Court of a "solid record" to review. The Court further held that such failure was not harmless error. Until this error is corrected, this Court is unable to determine if the Commissioner's decision is supported by substantial evidence on the record as a whole.

### CONCLUSION AND DECISION

Because of the legal error discussed above, this case is reversed and remanded to the Commissioner for reconsideration in light of the Social Security Rulings on the proper evaluation of obesity, and for a new decision consistent with those rulings and this opinion.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel*, 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406(b), and LR 54.2(b) [3]. *See also, Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002);

---

**2.** **Svelte:** 1) slender and graceful; lithe—used chiefly of women. 2) suave, polished, sophisticated. Webster's New World College Dictionary, fourth edition.

**3.** N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."

*Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.