DECISION
Plaintiff Gladys Town appeals in this action from a decision of a hearing officer of the Rhode Island Department of Human Services ("DHS") that denied her application for medical assistance benefits. She seeks reversal of that administrative decision on the grounds that the hearing officer did not give appropriate consideration to her treating physicians' opinions, failed to assess her symptoms in accordance with federal law, and failed to make necessary findings of fact. The DHS counters that his decision should be upheld because his finding that plaintiff Town could not conclusively be deemed severely impaired was supported by the record and made pursuant to the applicable legal standards. For the reasons set forth in this Decision, the Court sustains plaintiff Town's appeal, vacates the decision of the DHS hearing officer and remands this case to the DHS for further proceedings consistent with this Decision.
 Facts and Travel
Plaintiff Gladys Town filed for medical assistance benefits on March 14, 2003. After reviewing her application, the Medical Assistance Review Team ("MART") informed the DHS that it did not find plaintiff Town to be disabled. MART issued a written denial of plaintiff Town's application for medical assistance on May 30, 2003. The MART denial letter stated that she was not eligible for medical assistance benefits because she was "not aged, or blind, or permanently disabled." (Rosenblum Aff., Ex. 6 at 2.)[1]
The MART worksheet completed in conjunction with plaintiff Town's application noted that her primary complaints were of pain and depression and that the medical evidence was insufficient to determine the severity of her complaints. (Rosenblum Aff., Ex. 10 at 1.) Plaintiff Town timely filed for an administrative hearing on June 3, 2003. On August 20, 2003, a DHS hearing officer held a hearing to determine plaintiff Town's eligibility for medical assistance benefits through the federally funded Social Security program. In support of her application for medical assistance, plaintiff Town offered testimony at the hearing and supplied the hearing officer with numerous medical records — dating back to March of 2001 — regarding her alleged medical impairments.
According to the thirty-nine year old applicant, although she was previously employed as a nursing assistant, she has been unable to maintain steady employment since 1994 and was unemployed at time of the hearing. (Hearing Transcript of August 20, 2003, at 7, 18.) Plaintiff Town explained that her inability to work for more than a couple of weeks at a time has been the result of "the car accidents and the fibromyalgia, the depression and irritability[.]"[2] (Tr. at 7.) In describing her suffering from fibromyalgia, plaintiff Town stated:
 It's like — the way I describe it to people that don't know about fibromyalgia is it's like if you went to the gym and did an extensive workout and then you're sore all over except mine doesn't go away. And I have — um — additional things that go with it. Striking pains down my legs, numbness in my hands (inaudible) and the topes [sic] of my shoulders I (inaudible), my arms — um — I have muscle spasms. My — my muscles get really, really tight and I can't loosen them up without medication. Massages hurt. . . . I don't sleep well, and I get depressed because I just want to go and do the normal things I used to do before I got fibromyalgia, and I can't because I want to do everything.
(Tr. at 8.) She also explained that she has about twelve (12) "trigger points" on her body that, when pressured, "disable [her]":
 I have two trigger points in my jaw, one on each side. I have two trigger points in my back — (inaudible) area, two trigger points at the base of my neck, two trigger points at my lower spine, two trigger points behind my knees and — in front of my knees — and two trigger points on each elbow.
Id. Furthermore, plaintiff Town detailed her inability to accomplish a variety of nominal tasks because of her condition:
 I can't do dishes because I'm standing at a sink. I can't do the laundry because I have to go down the stairs and my knees wobble. I can't carry — um — anything over 6 pounds — um — I can't wash the tub, can't bend over and wash the tub — um — when I'm really bad, I have to have my husband help me in and out of the tub because I can't stand in the shower. Um — sometimes I can't even tie my shoelaces. My husband has to put my socks and shoes on. Um — without medication, he's — he's totally dressing me and occasionally sometimes has to wash me in bed when I'm really bad.[3]
(Tr. at 9.) Plaintiff Town noted that her pain is magnified when it rains, snows or is humid outside. (Tr. at 10.) In addition, she has difficulty sleeping and wakes up "two or three times a night" as a result of her condition. (Tr. at 11.) Although she is constantly suffering from pain, medication has been successful in limiting her overall level of discomfort. (Tr. at 9.)
In addition to the testimony regarding her fibromyalgic condition, plaintiff Town described how she suffers from depression. (Tr. at 15.) Plaintiff Town stated that she "get[s] depressed a lot" and that she will often "just sit there and cry, cry, cry, cry if [she's] alone." Id. She said she visited a couple of doctors for her depression and received medicine, such as Zoloft, as treatment. Id. At the time of the hearing, plaintiff Town was no longer receiving psychiatric treatment because she was not covered by medical insurance. (Tr. at 16.)
Plaintiff Town also supplemented her testimony with medical records to aid the DHS in evaluating her eligibility for medical assistance benefits. On March 15, 2001, William F. Garrahan, M.D., drafted a letter to a colleague, Nabil Zahreddine, M.D., regarding plaintiff Town's condition, in which he stated:
 It is my impression that this patient's answer to all of her problems is probably most likely fibromyalgia. She has trigger points and she has multiple areas and she has had chronic pain for so long. She is definitely disabled from working. She can't hold a job anywhere. She is in need of help. There isn't any medical treatment that I can render. I will support her in her efforts to get the Social Security Disabilities.
(Rosenblum Aff., Ex. 12, Garrahan's March 15, 2001 letter.) Dr. Garrahan later noted — on June 19, 2001, on a form concerning plaintiff Town's ability to sustain competitive full-time employment — that he had "only seen this [patient] once" and "she probably is a candidate for [Social Security] benefits[.]" (Rosenblum Aff., Ex. 12, Medical Questionnaire dated June 12, 2001.)
Between August 6, 2001 and January 11, 2002, plaintiff Town met with Marvin Leftick, M.D., on five occasions to receive treatment for her depression and pain symptoms. Following her second visit, Dr. Leftick observed a possible link between plaintiff Town's pain symptoms, fibromyalgia, and depression. (Rosenblum Aff., Ex. 12, Leftick report dated Aug. 21, 2001.) The physician noted that plaintiff Town had "myofascial pain consistent with [fibromyalgia]" and that "she has deep psychologic problems? personality [sic] disorder, underlying her chronic pain syndrome." Id. Dr. Leftick remarked, "[i]t is likely that she will need to see a psychiatrist on a routine basis" and, throughout the course of treating plaintiff Town, consistently advised her to seek psychiatric treatment. Id. In a later visit, he reported that "she is known to have both fibromyalgia and chronic depression. (Rosenblum Aff., Ex. 12, Leftik report dated Sept. 20, 2001.) Additionally, Dr. Leftick observed that plaintiff Town's "symptoms were variable and especially weather and stress dependant" and that she had "myofascial tender points in a fibromyalgia distribution."[4] (Rosenblum Aff., Ex. 12, Leftick report dated Dec. 7, 2001.) Ultimately, Dr. Leftick diagnosed plaintiff Town with chronic depression and chronic pain syndrome. (Rosenblum Aff., Ex. 12, Medical Questionnaire dated Feb. 15, 2002.) Dr. Leftick concluded that plaintiff Town could not sustain competitive full-time employment on an ongoing basis.Id.
In completing a worksheet regarding plaintiff Town's functional limitations, Dr. Leftick characterized her degree of pain as "severe" and indicated that she could lift and carry up to 5 lbs. "occasionally"; bend, squat, and kneel, "occasionally"; never crawl; and never use her arms, hands, or legs, for repetitive actions. (Rosenblum Aff., Ex. 12, Dr. Leftick worksheet dated Feb. 15, 2002.) He also noted that plaintiff Town had zero capacity to sit, stand, or walk during an eight-hour workday and that she could not "sit and/or stand in combination" for more than one hour until she needs to lie down. Id.
Plaintiff Town also was evaluated by Ronald Nappi, Ed.D. on January 28, 2002. Dr. Nappi's assessment focused primarily on plaintiff Town's psychological condition. He concluded:
 [plaintiff Town] does have persistent manic syndrome characterized by at least three of the following — hyperactivity, pressured speech, flight of ideas, decreased need for sleep, and easy distractibility. Also, she has marked restrictions in daily activity; marked difficulties in maintaining social functioning; and deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner, and repeated episodes of deterioration and decompensation in work or work-like settings. I find that [plaintiff Town] does meet the criteria under 12.04 Affective Disorders.
(Rosenblum Aff., Ex. 12, Nappi's note dated Jan. 28, 2002 at 4.) Dr. Nappi diagnosed plaintiff Town with "[m]ajor depressive disorder recurrent, moderate." Id.
In April of 2002, plaintiff Town met with Diane Decker, a psychotherapist. (Rosenblum Aff., Ex. 12, Decker Treatment Plan.) Decker reported plaintiff Town's DSM-IV Axis III diagnosis to be fibromyalgia and arthritis and her Axis IV diagnosis to be stress from pain, chronic anxiety, and panic attacks. Id.
Additionally, Decker assessed plaintiff Town as having a GAF score of 40 which falls into the "Impaired Reality Testing" range. Id. In reporting her clinical formulation of plaintiff Town, Decker wrote, "[the patient] appears to be suffering from depression and anxiety. [The patient] expects the worse to happen and is constantly on edge `waiting for something negative to happen.' [The patient] has been both hurt physically [and] traumatized emotionally by a very bad car accident." Id.
Although plaintiff Town visited Decker on at least two occasions and set a variety of treatment goals, it does not appear from the medical records that plaintiff Town continued the treatment relationship beyond April 2002. Id.
Later that year, between August 22, 2002 and December 12, 2002, plaintiff Town visited Margaret K. Koehm, M.D., on five occasions. Initially, Dr. Koehm assessed her as having "[f]ibromyalgia with chronic pain component, also question of bipolar disorder based on patient's mood swings as exhibited here and by specialist." (Rosenblum Aff., Ex. 12, Koehm's note dated Nov. 5, 2002 at 1.) Despite these declarations, Dr. Koehm later noted that plaintiff Town's "physical exam was grossly normal[.]" (Rosenblum Aff., Ex. 12, Koehm's letter dated March 1, 2003.) Indeed, following plaintiff Town's final visit, Dr. Koehm concluded, "[d]uring the five office visits in which I have examined Gladys, I did not detect any significant medical problems impairing her ability to work." Id. Yet, Dr. Koehm acknowledged that plaintiff Town "has had a long standing patient relationship with Dr. Zahreddine and he may be able to provide you with a better estimate of this patient's ability to work."[5] Id.
During the same period of time that plaintiff Town received treatment from Dr. Koehm, she also consulted Keith W.L. Rafal, M.D., a specialist in fibromyalgia, and Ranbir Dhillon, M.D., a neurologist, regarding her condition. Initially, Dr. Dhillon examined plaintiff Town and observed:
 The patient's symptoms of muscle aches and numbness may be compatible with fibromyalgia. Her exam is largely unremarkable except for mild asymmetry in the knee reflexes. Strength appears to be limited by her muscle aches and pains. However, I did get the sense that she had good distal strength. . . . I explained to the patient and her husband that this may be a challenging case and finding a neurological basis for her condition may be difficult.
(Rosenblum Aff., Ex. 12, Dr. Dhillon's note dated Oct. 22, 2002 at 2.) To discern the source of plaintiff Town's pain, Dr. Dhillon ordered an MRI of her brain, cervical spine and lumbar spine. Id. After reviewing the MRI film, Dr. Dhillon concluded that "it largely appears unremarkable" and that plaintiff Town would be best served by seeing a fibromyalgia specialist. Id.
Dr. Rafal noted that plaintiff Town raised concerns about her disability, and he informed her that it was his goal to "keep her at the highest level of functioning possible." (Rosenblum Aff., Ex. 12, Rafal telephone note dated Jan. 31, 2003.) Regarding his overall impression of plaintiff Town following a physical examination in which her "effort was decreased more due to pain or fear of pain," Dr. Rafal remarked, "the patient appears to meet criteria for a diagnosis of fibromyalgia. I am also concerned by a fairly significant depression and possible mood disorder that may be further exacerbating some of her symptoms." (Rosenblum Aff., Ex. 12, Rafal's note dated Oct. 31, 2002 at 3.) Later, Dr. Rafal observed that "[plaintiff Town] continues to have very significant complaints of pain." (Rosenblum Aff., Ex. 12, Rafal's note dated Dec. 27, 2002 at 2.) Ultimately, on January 31, 2003, Dr. Rafal deduced that "[h]er concern over disability will be based upon her response to treatment or lack of response to treatment and the rehab that has been recommended. It would be premature for me to make a judgment at this time." (Rosenblum Aff., Ex. 12, Rafal telephone note dated Jan. 31, 2003.)
Plaintiff Town also met with Dr. M. Anis Rahman, a rheumatologist, on February 20, 2003. (Rosenblum Aff., Ex. 12, Rahman's note dated March 18, 2003.) Dr. Rahman noted: "[her] [p]hysical exam did not show any evidence of active synovitis involving any joint. Range of motion is normal in all joints. There were tender points around her shoulders, hips, as well as knees." Id. at 1. Dr. Rahman concluded, "[plaintiff] Town's symptoms, of a physical finding, as well as laboratory and x-ray studies, are most consistent with fibromyalgia[.]" Id. at 2. Additionally, the physician "encouraged her to be physically as active as she possibly can, and also suggested that she get into a regular exercise program." Id.
In connection with her medical visits, plaintiff Town's physicians prescribed her numerous medications to assist her in coping with her mental and physical symptoms. (Rosenblum Aff., Ex. 12.) Her prescriptions included Zoloft, Tylenol #3, Soma, Percocet, Neurontin, Darvocet, Ultram and Nexium. Id. In addition, Dr. Rafal encouraged plaintiff Town to seek physical therapy for her conditions. (Rosenblum Aff., Ex. 12, Rafal note dated Dec. 27, 2002 at 1.) The record indicates that she met with a physical therapist on a few occasions but, according to Dr. Rafal, the program yielded questionable benefits. (Rosenblum Aff., Ex. 12, Rafal note dated Oct. 31, 2002 at 2.)
On September 19, 2003, following the administrative hearing regarding plaintiff Town's application for medical assistance benefits, her attorney submitted a letter to the hearing officer highlighting the applicable legal standards and urging the reversal of the agency's initial denial of benefits. (Rosenblum Aff., Ex. 8, R.I. Legal Services letter dated Sept. 19, 2003.) On November 12, 2003, after considering plaintiff Town's testimony, the medical records, and her attorney's letter, the hearing officer rendered a written decision regarding plaintiff Town's eligibility for medical assistance benefits. The hearing officer upheld the determination by MART that plaintiff Town was not eligible for medical assistance benefits. The hearing officer determined that "there was insufficient specific evidence to yield the determination that [plaintiff Town] has a severe impairment." (DHS Decision at 5.)
In the decision, the hearing officer focused primarily on plaintiff Town's medical records. Initially, the hearing officer noted Dr. Garrahan's assessment — that plaintiff Town was definitely disabled — and emphasized that he had only seen her once. Id. at 4. The hearing officer then considered the treatment rendered by Dr. Leftick and concluded that the "physicians [sic] notes from four visits during this period seem to concentrate on [plaintiff Town's] descriptions of pain, and medications prescribed to treat this pain. There is no apparent specific diagnosis, or any substantiation of [her] medical problem(s)." Id. Regarding Dr. Nappi's evaluation, the hearing officer noted that a "possible affective disorder" was indicated but that plaintiff Town failed to follow up with continuing treatment after two visits in the spring of 2002. Id. The hearing officer considered plaintiff Town's five visits to Dr. Koehm and highlighted the physician's conclusions that there were no detectable medical problems impairing plaintiff Town's ability to work. Id. In addition, with respect to plaintiff Town's credibility, the hearing officer determined that there were "significant concerns . . . based on her testimony and fragmented medical history." Id. at 5. Ultimately, in denying plaintiff Town's request for benefits, the hearing officer deduced:
 Numerous physicians have treated or examined [plaintiff Town], none for any long periods of time. None of the treating physicians have provided specific diagnostic tests, specific limitations, or can provide a clear picture of the severity of [her] impairment. Records from the most recent primary care physician do indicate that she can detect no specific problems impairing the ability to work.
Id.
Plaintiff Town filed a timely appeal from the decision of the hearing officer with this Court. She argues on appeal that his determination that she is not severely impaired is clearly erroneous in light of the reliable, probative and substantial evidence of record confirming her serious physical and mental disabilities. In addition, plaintiff Town maintains that the hearing officer failed to appropriately weigh the physicians' assessments and, more specifically, the evaluation of Dr. Leftick, in violation of federal law. Furthermore, plaintiff Town claims that the hearing officer failed to assess her pain symptoms as required by federal law. Finally, she asserts that his decision was arbitrary and capricious because it failed to make necessary findings of fact.
The DHS counters that the hearing officer's decision denying plaintiff Town's application for medical assistance benefits should be upheld because it was made in conformity with governing law. The agency states that the hearing officer meticulously considered all of the evidence presented and assigned the appropriate weight to the treating physicians' assessments. Ultimately, the DHS maintains that his decision was correct because the evidence was insufficient to support a conclusive finding that plaintiff Town suffers from a severe impairment.
 Standard of Review
This Court's review of an administrative decision is guided by the provisions of R.I. Gen. Laws 1956 § 42-35-15(g), as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Ctr. forBehavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680,684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Newport Shipyard, Inc. v. Rhode Island Commission for HumanRights, 673 A.2d 457, 459 (R.I. 1996). This Court may not substitute its judgment for that of the agency on issues of fact or with regard to the credibility of witnesses where substantial evidence exists to support the agency's findings. SeeMercantum Farm Corp. v. Dutra, 572 A.2d 286, 288 (R.I. 1990);Barros, 710 A.2d at 684; Baker v. Dep't of Employment andTraining Bd. of Review, 637 A.2d 360, 366 (R.I. 1994). Only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record" may this Court reverse. Baker, 637 A.2d at 363 (quotingMilardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). Questions of law are not binding upon the court and are reviewed de novo. Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (R.I. 1977); Bunch v. Bd. ofReview, R.I. Dep't of Empl. Training, 690 A.2d 335, 337 (R.I. 1997). It is inherent in the power of this Court to order a remand to the administrative agency to "correct deficiencies in the record and thus afford the litigants a meaningful review."Birchwood Realty, Inc. v. Grant, 627 A.2d 827, 834 (R.I. 1993) (quoting Lemoine v. Dep't of Mental Health, Retardation, Hospitals, 113 R.I. 285, 290, 320 A.2d 611, 614 (1974)).
 Standards for Determining Eligibility for Medical Assistance
The medical assistance program is a product of the federal Social Security Act and is administered by the federal government. See 42 U.S.C. § 1396 et. seq. The DHS manages the program on a statewide level in Rhode Island and, in so doing, is bound by the guidelines established by the federal government. Id.; Tierney v. Dep't of Human Services,793 A.2d 210, 211 (R.I. 2002). Under federal law, "an individual shall be considered to be disabled . . . if he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3). To determine whether a particular individual is disabled, the DHS is required to employ the five-step sequential evaluation method set forth in the federal regulations. See 20 C.F.R. § 416.920. The questions asked pursuant to these regulations are as follows:
 1. Is the claimant engaged in substantial gainful activity?
2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920(a)(4)(i)-(v); see also Bowen v.Yuckert, 482 U.S. 137, 141-43 (1987). The claimant bears the burden of proof with regard to the first four steps and, once the inquiry reaches step five, the burden shifts to the agency to establish that the claimant can perform work in the national economy other than his or her past relevant employment. SeePope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993). "A negative answer to any question, other than step three, leads to a determination of `not disabled.'" McDaniel v. Bowen,800 F.2d 1026, 1030 (11th Cir. 1986); see also Barnhart v. Thomas,540 U.S. 20, 24 (2003).
 The Step Two Inquiry
There is no dispute that plaintiff Town satisfied her burden of proving, under step one of the sequential evaluation process, that she was not engaged, at the time of the hearing, in substantial gainful activity. The focus on appeal, therefore, is whether, under step two of the applicable methodology, the hearing officer erred in determining that plaintiff Town did not suffer from a severe impairment or that she had failed to meet her burden of proving such an impairment.
On appeal, plaintiff Town claims that the evidence presented to the hearing officer demonstrated that her impairments "easily exceeded" the requirements of the de minimis test used to evaluate severity. She maintains that the hearing officer's finding to the contrary was clearly erroneous in light of the medical records and testimony presented at the hearing. More specifically, plaintiff Town argues that the evaluations of Dr. Leftick and Dr. Nappi regarding her physical and mental abilities illustrate her inability to perform basic work activities due to the combination of disabilities from which she suffers.
In response, the DHS asserts that the hearing officer's decision should be upheld as it was based upon a review of the whole record. The DHS maintains that the decision was appropriate given that none of the treating physicians presented the results of specific diagnostic tests, articulated specific limitations, or could present a clear picture of plaintiff Town's alleged impairments. In addition, with respect to plaintiff Town's fibromyalgic condition, the DHS claims that its determination of its severity was based appropriately in large part on her credibility. The DHS suggests that, under the current regulations, significant weight is given to the hearing officer's assessment of the claimant's testimony in cases of fibromyalgia because it is a condition that is "impossible to qualify or quantify." Ultimately, the DHS argues that the hearing officer's decision should be upheld considering the serious concerns he expressed about plaintiff Town's credibility and the lack of specific evidence sufficient to support a finding that she suffers from a severe impairment.
 The De Minimis Standard of Proving a Severe Impairment
Initially, it should be noted that "[a]s with other elements involved in establishing a prima facie case of disability, the claimant has the burden of establishing the presence of a severe impairment." 3 Social Security Law and Practice § 41:3 (2003) (citing Bowen, 482 U.S. 137; Caviness v. Massanari,250 F.3d 603 (8th Cir. 2001)). Step two of the sequential disability evaluation is "a de minimis standard." Lisi v. Apfel,111 F. Supp. 2d 103, 110 (D.R.I. 2000) (citing McDonald v. Secretary ofHealth and Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986)). "[A] finding of `non-severe' is only to be made where `medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered[.]'" Id. (quoting McDonald, 795 F.2d at 1124; citing Social Security Ruling 85-28). The step two "`non-severe' inquiry was designed to screen out `totally groundless claims.'"Andrades v. Secretary of Health and Human Servs., 790 F.2d 168,171 (1st Cir. 1986) (citing Farris v. Secretary of Health andHuman Servs., 773 F.2d 85, 89 (6th Cir. 1985)). "In particular, benefits may not be denied at the Step [two] stage of the sequential evaluation process if a disability, whatever its level of severity, leaves a claimant unable to perform his or her past relevant work." Id.
In the case at hand, the hearing officer failed to articulate and apply the appropriate legal standard at step two of the sequential evaluation process. The written decision does not acknowledge the low threshold for finding a "severe impairment" at that stage of the inquiry. Rather than set forth any standard for finding a severe impairment, the hearing officer simply reviewed the medical record, commented on plaintiff Town's testimony, and rendered his finding that the evidence was insufficient to determine that she suffered from a severe impairment. In addition, the only evidence regarding her ability to perform her past relevant work was her own uncontroverted testimony that working as a nursing assistant was too physically demanding. Although it is possible that the hearing officer would have reached the same result applying the de minimis standard, this Court cannot say that the evidence was so clearly weighted against plaintiff Town that such error of law was harmless. SeeCaviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (court reversed and remanded decision of administrative law judge because he committed legal error by not acknowledging the correct legal standard at step two of the disability inquiry); Andradesv. Sec'y of Health and Human Servs., 790 F.2d 168, 171 (1st Cir. 1986) (court vacated and remanded a disability benefits determination where there was "no indication that the Council was interpreting the language of [step two] in the limited way required by [Social Security] Ruling 85-28"). Accordingly, this Court must vacate the decision and remand the matter back to the agency for further consideration under the appropriate legal standard.
 Weighing and Resolving Conflicts in the Medical Evidence
Separate and apart from the hearing officer's failure to acknowledge the correct legal standard applicable to the step two inquiry, a remand is required because the hearing officer failed to resolve conflicts in the medical evidence. On remand, the hearing officer must assign appropriate weight and credibility to the physicians offering medical opinions in the case and resolve any conflicts in their opinions.
According to the relevant federal regulations, the hearing officer is to give controlling weight to a treating physician's opinion on the issue(s) of the nature and severity of the claimant's impairment so long as it is well-supported by medically acceptable clinical and laboratory diagnostic tests and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). A "treating physician" is a claimant's own physician or psychologist who has provided medical treatment or evaluation under an ongoing treatment relationship.20 C.F.R. § 416.902. Under the language of the regulations, a physician who has only examined the claimant once cannot be considered "treating."[6] Isako v. Apfel, 2001 U.S. App. LEXIS 2993, **4 (9th Cir. 2001). Furthermore, "[a]lthough a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as [a] whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (citing Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)). The hearing officer "may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence." Id. "[I]n the not uncommon situation of conflicting medical evidence . . . the trier of fact has the duty to resolve that conflict." Ladd v. Barnhart, 2005 U.S. Dist. LEXIS 14036 (W.D.Va. 2005) (quoting Richardson v. Perales,402 U.S. 389, 399 (1971)).
In the instant matter, rather than basing the decision to deny medical benefits on an assessment of the weight and credibility of plaintiff Town's physicians' competing opinions, the hearing officer impermissibly concluded that plaintiff Town's claim for medical assistance benefits should be denied at step two of the sequential evaluation process because there was insufficient evidence to reach a finding of disability. In reaching this conclusion, the hearing officer failed to fulfill his duty to fully assess the medical evidence and to resolve the conflicts presented by contradictory statements in the medical evidence.See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("[i]n [medical assistance] cases the [reviewing body] has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered"). Although the outcome of his decision is consistent with Dr. Koehm's assessment, the decision fails even to attempt to distinguish Dr. Koehm's evaluation as superior to that of the other treating physicians. Instead, the hearing officer casually dismissed a number of physician's impressions regarding plaintiff Town's condition without fully acknowledging or examining the substance of their findings or explaining why he discounted those findings.
The hearing officer rejected Dr. Leftick's opinions finding that he rendered "no apparent specific diagnosis" regarding plaintiff Town's condition and that he "seem[ed] to concentrate on [her] descriptions of pain" rather than objective symptoms. (DHS Decision at 4.) These conclusions contradict the medical records of Dr. Leftick that were submitted by plaintiff Town that specifically note that she had "myofascial tender points in a fibromyalgia distribution" and that her pain was consistent with fibromyalgia. (Rosenblum Aff., Ex. 12, Leftick reports dated Sept. 20, 2001 and Dec. 7, 2001.) The hearing officer also overlooked the medical questionnaire completed by Dr. Leftick stating that plaintiff Town is diagnosed with chronic pain syndrome and chronic depression. In addition, the hearing officer either misinterpreted or ignored Dr. Leftick's acquiescence with plaintiff Town's other treating physicians who diagnosed her with fibromyalgia.[7]
The decision also fails to sufficiently assess the weight and credibility to be given to Dr. Nappi's mental evaluation of plaintiff Town and to consider her alleged mental and physical disabilities collectively. As Social Security Ruling 86-6 explains:
 When assessing the severity of multiple impairments, the adjudicator must evaluate the combined impact of those impairments on an individual's ability to function, rather than assess separately the contribution of each impairment to the restriction of function as if each impairment existed alone. When multiple impairments, considered in combination, would have more than a minimal effect on the ability to perform basic work activities, adjudication must continue through the sequential evaluation process.
Despite the hearing officer's obligation to consider each of plaintiff Town's medical issues individually and as a whole, he did not address the significance of her diagnosis of major depressive disorder — by Dr. Nappi, Dr. Leftick, and Dr. Rafal — individually or in conjunction with her diagnosis of fibromyalgia. The closest the hearing officer came to discussing the issue of plaintiff Town's depression was his statement that "[a] psychological evaluation completed January 28, 2002 indicates a possible affective disorder[.]" (DHS Decision at 4.) Ultimately, the hearing officer's failure to appropriately weigh the competing medical opinions, resolve the physicians' conflicting assessments and consider her alleged mental and physical impairments collectively amounts to an error of law requiring this Court to vacate the decision and remand the case for further proceedings.[8]
 Evaluating a Claim of Fibromyalgia
When the issues involved in an administrative agency's decision are either highly technical or require specialized knowledge possessed by the agency, it necessarily follows that judicial deference should be afforded that decision. Robert E. Derecktor,Inc. v. United States, 762 F. Supp. 1019, 1022 (D.R.I. 1991). When an administrative agency does not possess expertise in a particular area, however, such as occurred here with the hearing officer's assessment of plaintiff Town's claim of fibromyalgia, it follows that less deference should be afforded to the decision of the agency. Although not dispositive of the hearing officer's decision, the brief statements made here by the hearing officer to discredit the medical evidence indicating that plaintiff Town suffered from a severe impairment — particularly Dr. Leftick's assessment — demonstrate that the hearing officer may have misunderstood the condition of fibromyalgia.
When considering a claim for medical assistance benefits based on fibromyalgia, the trier of fact should be mindful of the condition's distinctive nature and allow its unique characteristics to guide the analysis of the particular claimant's application for benefits. See Leonard v. Apfel,
2000 U.S. Dist. LEXIS 20880 (D.N.H. 2000); Forehand v.Barnhart, 364 F.3d 984, 987 (8th Cir. 2004); Orender v.Barnhart, 2002 WL 1747501, *6-*7 (D.Kan. 2002). In Leonard,
the court explained the inherent difficulties in determining whether a claimant allegedly suffering from fibromyalgia qualifies for disability benefits. 2000 U.S. Dist. LEXIS 20880, at *12. The court noted that fibromyalgia presents an especially difficult situation because "there are no recognized medical tests (i.e., objective evidence) that will definitively confirm a diagnosis of fibromyalgia or establish the degree of disability caused by that illness." Id. As a result, the court recognized that cases dealing with fibromyalgia turn "largely upon an assessment of the credibility of [the claimant's] assertion that [he or] she suffers from disabling pain, as well as a determination of the weight properly ascribed to the opinions of her treating physicians." Id. at *14.
As the court clearly articulated in Leonard, fibromyalgia is difficult to diagnose because there are no recognized medical tests that can determine objectively whether a person is suffering from the condition and, if so, its severity. Despite the lack of an objective test and the hearing officer's acknowledgment that fibromyalgia is "impossible to qualify or quantify," the hearing officer discounted Dr. Leftick's finding that plaintiff Town has a severe case of fibromyalgia because in the hearing officer's words, "there is no specific diagnosis, or any substantiation of [plaintiff Town's] medical problem(s)." Similarly, the hearing officer based his decision to conclude the evaluation of plaintiff Town's need for medical assistance at step two of the inquiry because "none of the treating physicians have provided specific diagnostic tests." Such analysis evidences the hearing officer's confusion regarding the distinctive nature of fibromyalgia, namely, that a diagnosis of the condition cannot be substantiated by objective medical evidence. See Garza v.Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005) (it was clear that an administrative law judge "misunderstood fibromyalgia" when, in summarizing the medical evidence, he discounted the claimant's symptoms of aches and pains because they were not substantiated by objective medical testing); see also Orender, 2002 WL 1747501 at *6 ("[a] medical opinion based on a physician's evaluation of the patient's medical history, observations of the patient, and an evaluation of the credibility of the patient's subjective complaints of pain, is medical evidence supporting a claim of disabling pain, even if objective test results do not fully substantiate the claim"). Furthermore, it should be noted that the federal regulations specifically acknowledge that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence."20 C.F.R. § 416.929(3). Under such circumstances:
 [b]ecause symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which [the claimant], [the claimant's] treating or examining physician or psychologist, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether [the claimant is] disabled.
20 C.F.R. § 416.929(c)(3). The hearing officer failed to consider this mandate and reconcile plaintiff Town's subjective complaints, at the hearing and as contained in the medical records, with the objective medical evidence.
Additionally, as previously mentioned, the hearing officer overlooked the consensus among the doctors that plaintiff Town's symptoms are consistent with fibromyalgia. Even Dr. Koehm, who "did not detect any significant medical problems impairing her ability to work," acknowledged that Town's pain and weakness were consistent with the condition. Although the record indicates that the severity of plaintiff Town's symptoms was difficult for the physicians to agree upon or even comprehend, the hearing officer failed to appropriately consider the medical record before him given the unique nature of fibromyalgia. See Orender, 2002 WL 1747501 at *7 (the administrative law judge should have considered all of the doctors' opinions, including assessments of subjective pain, when determining if claimant suffering from fibromyalgia had a severe impairment).
Finally, as noted by the court in Leonard, when a claimant is seeking medical assistance as a result of fibromyalgia, the hearing officer should place greater emphasis on assessing the credibility of the claimant. Even assuming, arguendo, that the hearing officer recognized the special context in which he should consider a claim for medical assistance based on fibromyalgia, the record does not indicate that he focused on plaintiff Town's description of pain or whether her medical records were suggestive of disabling pain. He also failed to sufficiently disclose the findings which ultimately led him to "have significant concerns about [her] credibility." The hearing officer's decision mentioned plaintiff Town's fragmented medical history as a reason for questioning her credibility but did not discuss any specific concerns with regard to her testimony, particularly as it concerned her descriptions of pain and functional limitations. The Rhode Island Supreme Court has stated that in dealing with evidentiary conflicts,
 [i]t is only by making basic findings of fact that a reviewing court is able to determine how such conflicts were resolved. "If a tribunal fails to disclose the basic findings upon which its ultimate findings are premised, we will neither search the record for supporting evidence nor will we decide for ourselves what is proper in the circumstances."
Cullen v. Town Council of the Town of Lincoln, 850 A.2d 900,904 (R.I. 2004) (quoting Hooper v. Goldstein, 104 R.I. 32, 44,241 A.2d 809, 815 (1968)). In considering the heightened importance of the credibility of a claimant alleging that he or she suffers from fibromyalgia in determining whether the condition constitutes a severe impairment, this Court finds that such a deficiency in the findings provides additional grounds for vacating the decision below and remanding it for further proceedings.[9]
 Conclusion
After review of the entire record, this Court finds that the hearing officer's decision was affected by errors of law. The hearing officer did not apply the correct legal standard when assessing the severity of plaintiff Town's impairment at step two of the sequential evaluation, he failed to appropriately weigh and resolve conflicts in the physicians' medical opinions, and he failed to analyze plaintiff Town's alleged impairment of fibromyalgia in the context of its distinctive nature. As a result, this Court vacates the decision below and remands the matter to DHS for further proceedings consistent with this opinion.[10]
Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment consistent with this Decision.
[1] Charles I. Rosenblum, Appeals Officer for the DHS, filed an affidavit dated January 6, 2004 listing by exhibit number the documents comprising the record below and certifying those documents as the record for appeal purposes. This Decision cites to his affidavit and attached exhibits to establish the relevant evidence on appeal.
[2] "Fibromyalgia" is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites."Stedman's Medical Dictionary 670 (27th ed. 2000).
[3] Plaintiff Town also stated that her previous job as a nursing assistant was too physically demanding for her because she could not lift the patients or walk around to help care for them. (Tr. at 19.) She testified that she took a job in the meat department at Stop Shop but had to quit because it was "too much lifting." Id. Finally, she discussed how she took a position as a saleswoman at a car dealership but was unable to continue working there because it was too stressful, her reading and math skills were inadequate, "[t]hey would take her money" and she was uncomfortable in her clothing there. (Tr. at 20.)
[4] The author of an unidentifiable handwritten note in Dr. Leftick's medical records, dated December 22, 2001, stated that plaintiff Town called at 2:15 a.m. because she was experiencing "severe pain." (Rosenblum Aff., Ex. 12, handwritten note on Leftick's report dated Dec. 7, 2001.) Plaintiff Town failed to go the emergency room in spite of the advice purportedly given to her by the author of the note. Id.
[5] Dr. Zahreddine was plaintiff Town's obstetrician gynecologist. (Rosenblum Aff., Ex. 12, Koehm's note dated Dec. 17, 2002.)
[6] Although Dr. Garrahan found plaintiff Town's condition to be severe, the hearing officer properly discounted the physician's opinion in this regard because he saw her only once and thus did not qualify as a "treating physician" under the relevant regulations and as further defined by the case law.
[7] Dr. Leftick noted that plaintiff Town "is known to have both fibromyalgia and chronic depression." (Rosenblum Aff., Ex. 12, Leftick report dated Sept. 20, 2001.)
[8] According to 20 C.F.R. 416.919a, there are particular circumstances under which it is recommended, or even required, that the reviewing body use a consultative medical examination to aid its disability determination. The regulation provides:
 (b) Situations requiring a consultative examination. A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination . . .
 (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source[.] Id.
Although DHS was not necessarily required to schedule a consultative examination for plaintiff Town, it appears that20 C.F.R. 416.919a(b)(4) was enacted to remedy circumstances similar to those facing the hearing officer in this case — inconsistent medical opinions and insufficiency of evidence. On remand, it would be advisable for the hearing officer to consider whether a consultative examination or consults with plaintiff Town's physicians would assist in resolving the conflicts in or insufficiency of the medical evidence.
[9] It also should be noted that, in cases regarding disability benefits, the hearing officer is required to consider specific aspects of the record and the claimant's testimony such as the "claimant's credibility, persistent attempts to find relief, willingness to try any treatment prescribed, regular contact with physicians, daily activities, medication, and psychological disorders." Porter v. Charter, 895 F. Supp. 1427, 1436 (D.Kan. 1995) (citing Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987)). In the instant matter, other than brief conclusory statements as to plaintiff Town's credibility and fragmented medical history, the hearing officer did not address the specific criteria outlined above.
[10] On remand, the hearing officer should allow plaintiff Town to supplement the record with any additional medical records that have been generated since her initial hearing. Moreover, the hearing officer must conduct step two of the sequential evaluation process anew, mindful of this Court's guidance. The hearing officer then should go on to consider subsequent steps in the methodology, regardless of his findings as to step two. The hearing officer, on remand, should make specific findings of fact and conclusions of law as to each step of the sequential evaluation process. From any subsequent decision, further review may be sought in this Court.